UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES R. DYKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-00370-MJD-RLY |
| MICHAEL J. ASTRUE Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff James R. Dykes filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423, and 1382c. For the reasons set forth below, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.[1]

### I.  PROCEDURAL HISTORY

Mr. Dykes filed his applications for DIB and SSI on April 6, 2010, alleging a disability onset date of February 1, 2010.  These claims were initially denied on July 2, 2010, and upon reconsideration on August 18, 2010.  Thereafter, Mr. Dykes requested a hearing, which was held on July 20, 2011 before Administrative Law Judge JoAnn Anderson (the "ALJ").  On September 23, 2011, the ALJ denied Mr. Dykes' applications, and on February 27, 2012, the Appeals

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

1

Council affirmed the ALJ's denial. The ALJ's decision is therefore the final decision of the Commissioner for purposes of judicial review.

## II.   FACTUAL BACKGROUND AND MEDICAL HISTORY

Mr. Dykes was 46 years old at the time of the ALJ's decision and had a high school education. Mr. Dykes last worked in February 2010, his alleged onset date. He has past relevant work experience as a dietary aide and cook supervisor, a grill cook, and a produce stocker. Mr. Dykes reported having bilateral shoulder pain including a right shoulder rotator cuff tear, back pain, left knee pain with a torn ACL, MCL and patella disorder, and frequent debilitating headaches. Mr. Dykes also experienced a stroke in May 2011.[2]

On December 7, 2010, an Indiana Administrative Law Judge approved Mr. Dykes' application for Indiana Medicaid disability benefits coverage. Mr. Dykes reported that he was diagnosed with back pain, joint pain, spina bifida, left knee problems with torn ACL, MCL and patella disorder, cracked right ankle and shoulder rotator cuff tear. Mr. Dykes provided documentation from his primary care physician regarding his limitations and capacity to perform work, which included significant limitations in walking, bending, squatting, crawling, climbing and reaching above his shoulders. He also demonstrated moderate limitations in standing and lifting and constant pain. The Indiana Administrative Law Judge concluded that this evidence confirmed that Mr. Dykes' impairments presented significant limitations to the claimant's ability to perform work and that he therefore met the disability requirements for Indiana's Medicaid program.

A January 2011 MRI revealed a complete tear in Mr. Dykes' right rotator cuff, as well as a high grade tear of the biceps tendon. Mr. Dykes underwent surgery to repair the tears in his right

---

[2] There is conflicting evidence as to whether Mr. Dykes experienced two separate strokes, or one stroke with symptoms that were overlooked during his first visit to the emergency room. [R. at 374.]

2

shoulder in March 2011, which was performed by Dr. Harris. Dr. Harris advised Mr. Dykes to wait three weeks before beginning physical therapy due to the extensive nature of the tear and the weakness of the tissue. Mr. Dykes' physical therapy was interrupted due to his stroke in May 2011, which slowed his recovery progress. The stroke also delayed scheduling surgery to repair Mr. Dykes' left shoulder. Dr. Harris opined that it would take Mr. Dykes at least six months to a year to fully recover from the surgery.

Dr. Harris also evaluated Mr. Dykes for left knee pain in March 2011. Physical examination revealed pain with the full range of motion and the knee was painful to palpitation. An x-ray of the left knee showed that Mr. Dykes had bone-on-bone contact with some patellofemoral spurring, and an MRI showed that he only had a few intact fibers of the anterior cruciate ligament present, as well as a complex tear of the meniscus. Dr. Harris concluded that Mr. Dykes had osteoarthritis in his left knee, a ligament tear and a meniscal tear. Dr. Harris recommended that Mr. Dykes forgo surgical treatment on his knee because it would probably require a partial or total knee replacement due to his osteoarthritic changes. He was instructed to continue on his pain medications of Naproxen and Hydrocodone.

Mr. Dykes' primary care physician, Dr. Palmer, issued a Physical Residual Capacity Assessment on March 24, 2011, stating that Mr. Dykes' lifting and carrying was limited to zero to ten pounds only rarely and could not lift or carry more than ten pounds; standing and walking with normal breaks was limited to a total of less than one hour in an eight hour workday; sitting with normal breaks was limited to less than two hours in an eight hour work day; pushing and pulling operations of hand or foot controls was limited in his upper extremities; limited use of hands for repetitive actions; rarely bend or climb; never crawl, kneel or squat; and no exposure to unprotected heights.

In June 2011, Mr. Dykes received a lumbar spine MRI to evaluate his complaints of low back and lumbar pain. The MRI showed multi-level degenerative changes, disc bulging and facet degeneration resulting in moderate spinal canal narrowing with contact to the left L4 nerve root and mild canal narrowing with contact to the left L2 nerve root.

At the administrative hearing, Mr. Dykes testified that he was currently being treated by Dr. Palmer for his back problems and that he had been referred to a pain specialist. He described the pain in his lower back as a sharp, pinching, piercing constant pain that centered around his waistline and radiated down into his hips and upper legs. He also testified that he had constant severe pain in his left knee, as well as swelling about four to eight hours per day. Mr. Dykes testified that the pain improved when he wore a brace and when he was able to elevate the knee. Despite his physical therapy, Mr. Dykes claimed that he still had constant pain in both shoulders.

### III. DISABILITY STANDARD OF REVIEW

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[3] "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*.

---

[3] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the claimant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c) and 416.924(c).  Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. § 404.1525.  If the claimant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3) (B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 USC §§ 423(d)(2)(B) and 1382a(a)(3)(G).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 19*92).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See Hendersen v. Apfel,* 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz,* 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler,* 768 F.2d 172, 179 (7th Cir.1985).

The ALJ's findings of fact, if supported by substantial evidence, are conclusive; however, "[i]n coming to his decision ... the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart,* 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's decision must also demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater,* 98 F.3d 966, 971 (7th Cir. 1996). While the

6

ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning through an adequate discussion, otherwise it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

## IV.    THE ALJ'S DECISION

The ALJ made the following findings as part of her decision.  Mr. Dykes met the insured status requirements of the Social Security Act for purposes of DIB through September 30, 2012.  Mr. Dykes had not engaged in substantial gainful activity since February 1, 2010, which is his alleged onset date.  The ALJ determined that Mr. Dykes has the following severe impairments: osteoarthritis of the left knee, degenerative disc disease of the lumbar spine, and a right shoulder rotator cuff tear, status post arthroscopy.  In discussing the impact of Mr. Dykes' stroke(s), the ALJ found that they did not have a lasting effect on his ability to perform basic work activities and was therefore not severe. The ALJ then determined that Mr. Dykes does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

With regard to Mr. Dykes' residual functional capacity ("RFC"), the ALJ found that he has the ability to perform light work with some restrictions.  She concluded that Mr. Dykes is restricted to no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders and scaffolds or work at heights; no more than occasional overhead reaching; and he needs the opportunity to sit or stand to perform work tasks.

The ALJ concluded that although Mr. Dykes is unable to perform his past relevant work, he could still perform jobs that exist in significant numbers in the national economy.

## V.   DISCUSSION

Mr. Dykes presents five basic arguments in his appeal.  First, he argues that the ALJ failed to support her step three determination by specifically analyzing evidence in relation to the listing of impairments.  Second, he argues that the ALJ erred in her failure to summon a medical advisor to testify as to whether Mr. Dykes' combined impairments medically equaled a listed impairment.  Third, that the ALJ did not give proper weight to evidence favoring a finding of disability, specifically evidence from Mr. Dykes' treating physicians and the findings of disability by the Indiana Medicaid Program.  Fourth, that the ALJ's credibility determination was patently erroneous.  Finally, he argues that the ALJ erred at step five by not supporting her determination with substantial evidence.   Each of Mr. Dykes' arguments is addressed in turn.

### A.  Step Three Analysis

Mr. Dykes argues that the ALJ erred at step three by failing to specify any listing in her step three determination and by failing to evaluate the evidence in relation to any of the elements of any listed impairment.  The Commissioner responded to this assertion by arguing that Mr. Dykes waived his arguments on appeal, and primarily focuses on Mr. Dykes' attorney's briefing style in this and other unrelated claimants' cases.  The Commissioner argues that Mr. Dykes did not demonstrate or argue that he met or medically equaled the requirements of any particular listing.  The Commissioner, in focusing on Mr. Dykes' attorney's briefing style as opposed to the substance of his appeal, failed to address the primary contention in Mr. Dykes' argument and the error that the ALJ, in fact, committed.

The Seventh Circuit has stated that when determining whether a claimant's condition meets or equals a listed impairment, an ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing."  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

The ALJ's "analysis" of whether Mr. Dykes' impairments meet a listed impairment consists of one sentence: "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1524, 404.1526, 416.920(d), 416.925 and 416.926)." [R. at 15.] There is no mention of any of the listed impairments under which Mr. Dykes' impairments could be classified, let alone any analysis as to why his impairments do not meet the requirements of any of the listings.

The Seventh Circuit criticized a similar perfunctory step three analysis in *Ribaudo v. Barnhart*, 458 F.3d 580 (7th Cir. 2006), in which the court stated "[w]hat is troubling is that the ALJ, in addition to not mentioning [the Listing], did not evaluate any of the evidence on its required criteria that is favorable to [the claimant]." The problem is not that Mr. Dykes failed to demonstrate that he met a listed impairment, as asserted by the Commissioner, but that the ALJ did not provide **any** support for her conclusion that Mr. Dykes' impairments did not meet or medically equal any listed impairments. In fact, Mr. Dykes' brief cites to several facts from the medical records that the ALJ could have used to either support or refute Mr. Dykes' claims. [Dkt. 19 at 17-22]. Even if there is adequate evidence in the record, as the Commissioner argued in support of the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Knox. v. Astrue*, 572 F. Supp. 926, 933 (N.D. Ill. 2008)(quoting *Ribaudo*, 458 F.3d at 584).

With regard to the question of medical equivalence, the Commissioner argues that the ALJ had the Disability Determination and Transmittal ("DDT") forms completed by state agency physicians and that she was permitted to rely on their conclusions. However, the ALJ does not even make mention of the DDT forms in her analysis, so it is not clear from the ALJ's opinion

9

whether she relied upon these forms or not to conclude that Mr. Dykes' impairments did not medically equal a listed impairment.

Unfortunately, the ALJ has not provided this Court with enough of an analysis to permit an informed review, and calls into question whether the ALJ adequately considered Mr. Dykes' case. *See Ribaudo,* 458 F.3d at 584 ("[The ALJ's] failure here to evaluate any of the evidence that potentially supported Ribaudo's claim does not provide much assurance that he adequately considered Ribaudo's case."). For this reason, this case must be remanded for a more thorough analysis of the evidence at step three.

### B. Failure to Summon a Medical Advisor

Mr. Dykes argues that the ALJ erred by failing to summon a medical advisor to testify whether his combined impairments medically equaled any listed impairment. The Commissioner is correct that DDT forms completed by state agency physicians fulfill the requirement for an expert medical opinion on the issue of medical equivalence to a listed impairment. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). However, as stated above, the ALJ failed to include even this minimal amount of information in her "analysis" of whether Mr. Dykes' impairments met or medically equaled a listed impairment. [R. at 15.] "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670.

As previously stated, the ALJ provided no indication as to what she considered in determining that Mr. Dykes' impairments did not medically equal a listed impairment; therefore, the failure to consult with a medical expert does constitute reversible error. However, the Court will not go so far as to say that the ALJ was required to summon an outside medical advisor to

10

testify at the hearing, merely that the ALJ must consider an expert's opinion on the issue of medical equivalency on remand.

### C. Failure to Consider Evidence Favoring Claimant

Mr. Dykes argues that the ALJ selectively considered evidence proving disability, including not giving proper weight to his treating physicians' opinions and the Medicaid ALJ's finding of disability. Because there was no analysis at step three on the question of whether Mr. Dykes' impairments met or equaled a Listing, this argument presumably applies to the ALJ's residual functional capacity determination.

Generally, the opinion of a claimant's treating physician is given more weight because of his or her greater familiarity with the claimant's conditions and circumstances. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). The ALJ cited to the opinions of treating physician Dr. Palmer, giving his opinion "minimal weight as it is not consistent with the evidence as a whole" and concluded that the findings in the record do not support the extent of the limitations noted in Dr. Palmer's opinion. [R. at 19]. However, the ALJ gave state consultative examiner Dr. Abou Mazdi greater weight, concluding that his opinion is generally consistent with the evidence as a whole. The ALJ did not accurately characterize some of the evidence cited prior to her perfunctory conclusion that Dr. Palmer's opinion was not supported by substantial evidence, nor did she note what weight was given to Dr. Harris' opinions. The ALJ discussed post-surgery medical notes showing that Mr. Dykes was "healing as expected" two weeks after surgery [R. at 17], but does not take into account that Dr. Harris noted that recovery would be a six month to a year process.

[R. at 381.]  She also ignored evidence that physical therapy was delayed due to the fact that the shoulder repair had involved a large tear, the weakness of the remaining tissue, as well as the delay due to Mr. Dykes' stroke.  [R. at 382.]  The ALJ did not note why she rejected the opinions of Dr. Harris, who also noted that he had bone-on-bone osteoarthritis in his knee and would possibly need a knee replacement.  [R. at 308.]

The ALJ did not provide an adequate explanation as to why Dr. Palmer's assessment was necessarily inconsistent with the evidence, and does not provide an adequate analysis in support of her conclusion. The failure to provide a basis for rejecting Dr. Palmer's opinion, as well as her failure to note what weight was given to Dr. Harris' opinion, constitutes reversible error. *See Clifford*, 227 F.3d at 870 ("[A]n ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability.") (internal quotations omitted).

With regard to the evidence of the Medicaid ALJ's finding of disability, the Seventh Circuit has stated that "[d]eterminations of disability by other agencies do not bind the Social Security Administration ...." *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir.2006).  However, Social Security Ruling 06-03p provides that, even though the ALJ is not bound by the disability determinations of other government agencies, the ALJ should explain the consideration given to these decisions in her opinion.  *Bullard v. Astrue*, 4:09-CV-19-WGH-RLY, 2010 WL 779454 (S.D. Ind. Feb. 26, 2010).  The ALJ did, in fact, mention the Medicaid ALJ's determination, and correctly stated that she was not bound by this decision.  [R. at 18.]  Therefore, this Court cannot say that the ALJ's rejection of the Medicaid determination of disability constitutes reversible error.

### D. Credibility Determination

Mr. Dykes argues that the ALJ's credibility determination is contrary to the requirements of Social Security Ruling 96-7p.  Specifically, he argues that the ALJ's credibility determination consisted of a boilerplate statement that failed to cite to any evidence.  "In making a credibility determination, the ALJ must give specific reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers will have a fair sense of how the claimant's testimony was assessed." *Wright v. Astrue*, 407-CV-0048-DFH-WGH, 2008 WL 2705174 (S.D. Ind. July 7, 2008) (internal quotations omitted); s*ee Brindisi v. Barnhart,* 315 F.3d 783, 787 (7th Cir. 20*03); *Steele v. Barnhart,* 290 F.3d 936, 941-42 (7th Cir.* 2002); Social Security Ruling 96-7p.

The ALJ's credibility assessment consists of one sentence at the end of the RFC analysis, and in its entirety states:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[R. at 19.]  The Seventh Circuit criticized an almost identical boilerplate credibility assessment statement that stated that the claimant's statements were "not credible to the extent that they are inconsistent with the above residual functional capacity assessment," determining that this boilerplate language implied that an individual's ability to work was determined before his credibility was determined, and "gets things backwards."  *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 20*12).  The RFC determination necessarily must take into account the claimant's subjective complaints about pain, intensity, persistence and limiting effects of his symptoms, but the determination of credibility appears to be deferred until after the determination of Mr. Dykes'

13

ability to work was assessed.  In addition, it is not clear that the ALJ considered the factors in SSR 96-7p, nor is it clear from the record that she "buil[t] an accurate and logical bridge" between Mr. Dykes' subjective complaints and her determination that his statements were not credible.  *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000); s*ee also Martinez v. Astrue,* 630 F.3d 693, 696 (7th Cir. 2011) (providing no explanation of which statements are not entirely credible or how credible or non-credible they are constituted reversible error). The Court finds that the ALJ's perfunctory "credibility determination" does not meet the requirements of SSR 96-7p and as set forth by the Seventh Circuit, thus constituting reversible error.

### E. Step Five Analysis

Finally, Mr. Dykes argues that the ALJ erred in her step five determination that he could perform some jobs.  He argues that the ALJ's hypothetical question to the vocational expert did not accurately describe Mr. Dykes' impairments, including limitations due to his strokes.  "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009) (*citing* SSR 96-8p; *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003).

Because the Court has already determined that the ALJ erred in her credibility determination, the ALJ will be required to re-evaluate Mr. Dykes' credibility, and any changes in her credibility determination shall be incorporated in the RFC analysis and in the hypothetical questions posed to the vocational expert at step five. *See Pickett v. Astrue,* 1:11-CV-0160-SEB-DML, 2012 WL 4470242 at *6 (S.D. Ind. Sept. 27, 2012).  In addition, the ALJ must take into consideration the effects of Dykes' stroke along with his severe impairments in posing hypothetical questions to the vocational expert.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED.

Date: 01/08/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov